UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.:

Shellian Clarke;
Donavan Clarke
Plaintiffs(s),

vs.

Carnival Corporation;
Defendant(s).

______________________________/

**COMPLAINT FOR DAMAGES**

Plaintiffs, Shellian Clarke and Donavan Clarke ("Plaintiffs"), by and through undersigned counsel, sue Defendant, Carnival Corporation, and demand trial, stating as follows:

**PARTIES AND JURISDICTION**

1. Plaintiffs seek damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C.§ 1333 as the causes of action asserted are maritime torts.

3. Suit is filed in the Southern District of Florida because of the federal forum selection clause in the Passenger Ticket Contract issued by the Defendant.

4. Plaintiffs are *sui juris* and are residents and citizens of Broward County, Florida.

5. Defendant, Carnival Corporation, is a foreign corporation who is authorized to conduct and who does conduct business in the State of Florida, who at all times material hereto was and is doing business in Miami-Dade Conty, FL, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

6. Defendant, Carnival Corporation, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

b. Had an office or agency in this state and/or county; and/or

c. Engaged in substantial activity within this state; and/or

d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

7. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

8. At all times material hereto, Defendant, Carnival Corporation, owned, operated, managed, maintained and/or controlled the vessel, the *Carnival Magic* and the shuttle boat transporting passengers to and from the *Carnival Magic*.

9. On or about July 10, 2025, Plaintiffs were injured while they were fare-paying passengers on Defendant's vessel, the *Carnival Magic*, which was in navigable waters, when the shuttle boat transporting them back from a Belize port to the cruise ship crashed into the *Carnival Magic*.

10. Following the incident, Plaintiffs went to the medical center aboard Defendant's

ship where Plaintiffs were seen by the ship's medical staff, including its physician, whom diagnosed Plaintiffs with lumbar spine injuries.

11. All causes of action herein are plead in the alternative and regardless of consistency pursuant to Federal Rule of Civil Procedure 8(d).

**COUNT I – NEGLIGENCE**
**(Shellian Clarke)**

12. Plaintiff Shellian Clarke reincorporates by reference and re-allege as though originally alleged herein the allegations of paragraphs 1 through 11, and further allege:

13. Defendant Carnival Corporation owed Plaintiff Shellian Clarke the duty to exercise reasonable care under the circumstances. This duty included, but was not limited to, the responsibility of a marine carrier of passengers under applicable U.S. maritime common law to supervise and/or assist passengers aboard the vessel.

14. A primary reason why U.S. maritime common law paces these duties upon marine carriers of passengers, rather than leaving it up to the passengers to supervise themselves in what (at least to the passengers) are the unfamiliar surroundings of a cruise ship, is to prevent marine accidents and causalities from occurring aboard vessels navigating on the high seas. Such incidents, unlike shoreside accidents, have the potential and likelihood to disrupt international commerce by diverting vessels from their itineraries for the purpose of obtaining advanced medical treatment and/or to conduct rescue operations and/or to call other vessels and/or shoreside agencies like the U.S. Coast Guard to come to render assistance.

15. At all times CARNIVAL CORPORATION as the owner and operator of the subject vessel which was engaged in the transportation of passengers for hire was a common carrier who owed a heightened duty of care to its passengers including the Plaintiffs. This duty included, but

was not limited to:

a. A duty to maintain reasonable and safe means for passengers to board and *disembark*[1].

b. a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger.

c. A duty to maintain its ship in a reasonably safe condition for the use and enjoyment of its passengers;

d. A duty to warn passengers of hazards which passengers may reasonably be expected to encounter;

16. On July 10, 2025, CARNIVAL CORPORATION, was operating a cruise ship open to the public for a fee using the subject vessel which was being operated on its behalf by the Captain.

17. At all times material on July 10, 2025, Plaintiff Shellian Clarke was lawfully aboard the subject vessel owned/operated by CARNIVAL CORPORATION and were not part of the crew of the vessel.

18. Prior to July 10, 2025, Defendant had constructive notice of dangerous conditions, including the foreseeable risk of vessel crashes aboard its ships, in that:

a. In the years preceding the date of the subject incident there had occurred a number of prior incidents involving Defendant's transport vessels crashing during passenger embarking, disembarking or maneuvering operations.

[1] See *Vierling v. Celebrity Cruises, Inc*., 339 F.3d 1309, 1319–1320 (11th Cir. 2003); *Tullis v. Fid. & Cas. Co. of N.Y.*, 397 F.2d 22, 23–24 (11th Cir. 1968); *Samuelov v. Carnival Cruise Lines, Inc.,* 870 So. 2d 853, 855–56 (Fla. 3d DCA 2003); *Luby v. Carnival Cruise Lines, Inc.,* 633 F. Supp. 40, 41 (S.D. Fla. 1986); *McBride v. Carnival Corp*., No. 1:16-CV-24894-JLK, 2019 U.S. Dist. LEXIS 128219 (S.D. Fla. July 31, 2019).

b. Defendant had actual knowledge of the danger of alluding with moored cruise ships while shuttling passengers on and off their ships.

c. Defendant knew or should have known that operating vessels with mechanical or engine deficiencies posed a risk of injury on a ship at sea if such deficiencies were present during navigation, passenger embarking and disembarking, or adverse weather conditions.

d. Defendant knew or should have known, pursuant to its operational safety protocols, that mechanical failures or deficiencies while a ship is underway could result in foreseeable injury to its passengers.

19. On July 10, 2025, Defendant had actual notice of the dangerous condition consisting of mechanical deficiencies and operational hazards aboard its vessel, in that;

a. The mechanical issues and deficiencies were apparent and within the Defendant's control for a substantial amount of time prior to the incident, which was sufficient for Defendant to be aware of the presence of such dangerous conditions while the ship was underway.

b. The Defendant and the operator of the shuttle were required to anticipate and safely respond to foreseeable mechanical issues with the vessel.

20. Additionally, Defendant through its own actions created the unsafe or foreseeably hazardous condition when it operated the vessel despite known mechanical deficiencies or failed to address operational hazards that posed a risk to passengers while the ship was underway.

21. On July 10, 2025, Defendant breached the foregoing duties of care to Plaintiff Shellian Clarke when it engaged in the following negligent acts or omissions concerning the

subject dangerous conditions of which it knew or should have known.

22. Specifically, on July 10, 2025, Defendant and/or its agents operated the vessel with known mechanical deficiencies or failed to correct operational hazards while the ship was underway, in a manner which was dangerous and would result in foreseeable harm to the Plaintiffs.

23. Defendants and/or its agents also failed to maintain a proper lookout and safely pilot the vessel to prevent a foreseeable allision with a fixed or moored vessel.

24. Subsequently, as a direct and foreseeable result of the dangerous condition created by Defendant, the shuttle boat crashed into the cruise ship, the *Carnival Magic*, causing injury to the Plaintiffs.

25. At the time of the allision the *Carnival Magic*, was stationery and properly moored and therefore under applicable law the operator of the shuttled is presumed to have been negligent and at fault for causing the incident.

26. Furthermore, CARNIVAL CORPORATION as the employer and/or master of the Captain, and the owner and operator of the subject vessel was responsible for ensuring that the subject vessel was properly maintained, free from mechanical or engine deficiencies, and was crewed with a competent captain and sufficient crew.

27. CARNIVAL CORPORATION as the owner/operator of the subject vessel owed its passengers including the Plaintiffs a duty of reasonable care to ensure that the subject vessel's crew operated the vessel safely, including keeping a proper look out and refraining from making any decisions which nautical experience and good seamanship would condemn as inexpedient and unjustifiable at the time and under the circumstances, and complying with all applicable inland navigation rules.

28. CARNIVAL CORPORATION breached these duties of care when it permitted its

captain and crew to engage in the following acts of negligence:

a. Violating Inland Navigation Rule 5 by failing to maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

b. Violating Inland Navigation Rule 6, by failing to at all times proceed at a safe speed so that he could take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions, including the state of wind and sea current.

c. Violating Inland Navigation Rule 7 by failing to use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists.

d. Failing to have sufficient crew aboard the vessel to properly keep a look out and safely dock the subject vessel.

e. Failing to take into account inclement and unsafe weather conditions ,and high wind speeds prior to setting out on the excursion.

f. Failing to consider if the subject vessel was sufficiently crewed prior to setting out for the excursion.

g. Failing to maintain control of the subject vessel at all times.

27. As a direct and proximate result of the foregoing acts of negligence Plaintiff Shellian Clarke was severely injured when on or about July 10, 2025, they boarded the shuttle boat

operated by CARNIVAL CORPORATION, which then crashed into the cruise ship, the *Carnival Magic*.

28. Prior to embarking, the Captain knew or should have known of mechanical or engine deficiencies affecting the shuttle boat, which posed an unacceptable risk to the passengers aboard the vessel. Despite these conditions, the Captain proceeded with transporting passengers from a Belize port to the *Carnival Magic*.

29. While attempting to maneuver the shuttle boat back to the *Carnival Magic*, the Captain experienced a malfunction and/or engine failure, which prevented him from stopping the shuttle boat. As a result, the shuttle boat crashed into the cruise ship, causing injury to Plaintiff Shellian Clarke.

30. Accordingly, as CARNIVAL CORPORATION and the Captain's actions caused an allision between the shuttle boat and the stationary cruise ship, the *Carnival Magic*, the law provides that there is a rebuttable presumption of negligence against the Captain.

29. As a direct and proximate result of CARNIVAL CORPORATION's negligence, Plaintiffs suffered severe bodily injury resulting in pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries, suffered permanent physical handicap, loss of earnings, and lost wage-earning capacity as her working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. The losses are either permanent or continuing in nature. Plaintiffs has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiffs, Shellian Clarke, demands trial and judgment against Defendant CARNIVAL CORPORATION for damages which in good faith exceed $75,000.00

exclusive of interest, costs, and attorney's fees, as well as for damages and costs that Plaintiffs will suffer and incur in the future, as a result of Plaintiffs' bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of future earning capacity, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, and for any and all other relief which the Court deems just or appropriate.

**COUNT II - VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**
**(Shellian Clarke)**

30. Plaintiff Shellian Clarke repeats and reallege paragraphs 1-11.

31. At all times CARNIVAL CORPORATION, was the owner and operator of the subject vessel and master and employer of the vessel's shuttle Captain, who at all times was acting in the course and scope of his employment or agency with CARNIVAL CORPORATION.

32. Accordingly, under general maritime law CARNIVAL CORPORATION as the owner and operator of the subject vessel is liable for the Captain's negligence pursuant to the doctrine of *respondeat superior.*[2]

33. On July 10, 2025, CARNIVAL CORPORATION, was operating a cruise ship open to the public for a fee using the subject vessel which was being operated on its behalf by the captain.

34. At all times material on July 10, 2025, Plaintiff Shellian Clarke was lawfully aboard the subject vessel owned/operated by, CARNIVAL CORPORATION and was not part of the crew

---

[2] *See Dolphin Cove,* 2020 U.S. Dist. LEXIS 247310, at *16; *Yusko v. NCL (Bah.), Ltd.*, 4 F.4th 1164, 1169-70 (11th Cir. 2021).

of the vessel.

35. Accordingly at all times the Captain while acting in the scope of his agency relationship or employment with CARNIVAL CORPORATION of the subject shuttle vessel owed his passengers including the Plaintiffs a duty of reasonable care to operate the vessel safely, including keeping a proper look out and refraining from making any decisions which nautical experience and good seamanship would condemn as inexpedient and unjustifiable at the time and under the circumstances, and complying with all applicable inland navigation rules.

36. CARNIVAL CORPORATION and its agents and employees further owed Plaintiff a duty to maintain reasonable and safe means for passengers to board and disembark.

37. At all times the Captain while acting in the course and scope of his employment and or agency for CARNIVAL CORPORATION, breached these duties of care when he engaged in following acts of negligence:

a. Violating Inland Navigation Rule 5 by failing to maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

b. Violating Inland Navigation Rule 6, by failing to at all times proceed at a safe speed so that he could take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions, including the state of wind and sea current.

c. Violating Inland Navigation Rule 7 by failing to use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists.

d. Failing to have sufficient crew aboard the vessel to properly keep a look out and safely dock the subject vessel.

e. Failing to properly maintain and service the vessel.

f. Failing to take into account inclement and unsafe weather conditions ,and high wind speeds prior to setting out on the excursion.

g. Failing to consider if the subject vessel was sufficiently crewed prior to setting out for the excursion.

h. Failing to inspect and maintain the subject vessel prior to departure to ensure it was in safe operating condition.

i. Failing to maintain control of the subject vessel at all times.

38. Prior to embarking, the Captain knew or should have known of mechanical or engine deficiencies affecting the shuttle boat, which posed an unacceptable risk to the passengers aboard the vessel. Despite these conditions, the Captain proceeded with transporting passengers from a Belize port to the *Carnival Magic*.

39. While attempting to maneuver the shuttle boat back to the *Carnival Magic*, the shuttle boat crashed into the cruise ship, causing injury to the Plaintiff Shellian Clarke.

40. Accordingly, as the Captain's actions caused an allision between the shuttle boat and the stationary cruise ship, the *Carnival Magic*, the law provides that there is a rebuttable presumption of negligence against Captain, and CARNIVAL CORPORATION is vicariously liable for the damages resulting from the Captain's negligence.

41. As a direct and proximate result of the foregoing acts of negligence by CARNIVAL CORPORATION's captain for which CARNIVAL CORPORATION is vicariously liable, Plaintiff

Shellian Clarke was severely injured as a result of this allision when on or about July 10, 2025, they were passengers on the subject vessel.

42. As a direct and proximate result of CARNIVAL CORPORATION's negligence Plaintiffs suffered severe bodily injury resulting in pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries, suffered permanent physical handicap, loss of earnings, and lost wage-earning capacity as their working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. The losses are either permanent or continuing in nature. Plaintiffs has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff Shellian Clarke demands trial and judgment against Defendant CARNIVAL CORPORATION for damages which in good faith exceed $75,000.00 exclusive of interest, costs, and attorney's fees, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiffs' bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of future earning capacity, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, and for any and all other relief which the Court deems just or appropriate.

**COUNT III – NEGLIGENCE**
**(Donavan Clarke)**

43. Plaintiff Donavan Clarke reincorporates by reference and re-allege as though originally alleged herein the allegations of paragraphs 1 through 11, and further alleges:

44. Defendant Carnival Corporation owed Plaintiff Donavan Clarke the duty to exercise reasonable care under the circumstances. This duty included, but was not limited to, the responsibility of a marine carrier of passengers under applicable U.S. maritime common law to supervise and/or assist passengers aboard the vessel.

45. A primary reason why U.S. maritime common law paces these duties upon marine carriers of passengers, rather than leaving it up to the passengers to supervise themselves in what (at least to the passengers) are the unfamiliar surroundings of a cruise ship, is to prevent marine accidents and causalities from occurring aboard vessels navigating on the high seas. Such incidents, unlike shoreside accidents, have the potential and likelihood to disrupt international commerce by diverting vessels from their itineraries for the purpose of obtaining advanced medical treatment and/or to conduct rescue operations and/or to call other vessels and/or shoreside agencies like the U.S. Coast Guard to come to render assistance.

46. At all times CARNIVAL CORPORATION as the owner and operator of the subject vessel which was engaged in the transportation of passengers for hire was a common carrier who owed a heightened duty of care to its passengers including the Plaintiffs. This duty included, but was not limited to:

e. A duty to maintain reasonable and safe means for passengers to board and *disembark.*

f. a duty to warn passengers of dangers of which the carrier knows or should

know, but which may not be apparent to a reasonable passenger.

g. A duty to maintain its ship in a reasonably safe condition for the use and enjoyment of its passengers;

h. A duty to warn passengers of hazards which passengers may reasonably be expected to encounter;

47. On July 10, 2025, CARNIVAL CORPORATION, was operating a cruise ship open to the public for a fee using the subject vessel which was being operated on its behalf by the Captain.

48. At all times material on July 10, 2025, Plaintiff Donavan Clarke was lawfully aboard the subject vessel owned/operated by CARNIVAL CORPORATION and were not part of the crew of the vessel.

49. Prior to July 10, 2025, Defendant had constructive notice of dangerous conditions, including the foreseeable risk of vessel crashes aboard its ships, in that:

a. In the years preceding the date of the subject incident there had occurred a number of prior incidents involving Defendant's transport vessels crashing during passenger embarking, disembarking or maneuvering operations.

b. Defendant had actual knowledge of the danger of alluding with moored cruise ships while shuttling passengers on and off their ships.

c. Defendant knew or should have known that operating vessels with mechanical or engine deficiencies posed a risk of injury on a ship at sea if such deficiencies were present during navigation, passenger embarking and disembarking, or adverse weather conditions.

d. Defendant knew or should have known, pursuant to its operational safety protocols, that mechanical failures or deficiencies while a ship is underway could result in foreseeable injury to its passengers.

50. On July 10, 2025, Defendant had actual notice of the dangerous condition consisting of mechanical deficiencies and operational hazards aboard its vessel, in that;

a. The mechanical issues and deficiencies were apparent and within the Defendant's control for a substantial amount of time prior to the incident, which was sufficient for Defendant to be aware of the presence of such dangerous conditions while the ship was underway.

b. The Defendant and the operator of the shuttle were required to anticipate and safely respond to foreseeable mechanical issues with the vessel.

51. Additionally, Defendant through its own actions created the unsafe or foreseeably hazardous condition when it operated the vessel despite known mechanical deficiencies or failed to address operational hazards that posed a risk to passengers while the ship was underway.

52. On July 10, 2025, Defendant breached the foregoing duties of care to Plaintiff Donavan Clarke when it engaged in the following negligent acts or omissions concerning the subject dangerous conditions of which it knew or should have known.

53. Specifically, on July 10, 2025, Defendant and/or its agents operated the vessel with known mechanical deficiencies or failed to correct operational hazards while the ship was underway, in a manner which was dangerous and would result in foreseeable harm to the Plaintiffs.

54. Defendants and/or its agents also failed to maintain a proper lookout and safely pilot the vessel to prevent a foreseeable allision with a fixed or moored vessel.

55. Subsequently, as a direct and foreseeable result of the dangerous condition created by Defendant, the shuttle boat crashed into the cruise ship, the *Carnival Magic*, causing injury to the Plaintiffs.

56. At the time of the allision the *Carnival Magic*, was stationery and properly moored and therefore under applicable law the operator of the shuttled is presumed to have been negligent and at fault for causing the incident.

57. Furthermore, CARNIVAL CORPORATION as the employer and/or master of the Captain, and the owner and operator of the subject vessel was responsible for ensuring that the subject vessel was properly maintained, free from mechanical or engine deficiencies, and was crewed with a competent captain and sufficient crew.

58. CARNIVAL CORPORATION as the owner/operator of the subject vessel owed its passengers including the Plaintiffs a duty of reasonable care to ensure that the subject vessel's crew operated the vessel safely, including keeping a proper look out and refraining from making any decisions which nautical experience and good seamanship would condemn as inexpedient and unjustifiable at the time and under the circumstances, and complying with all applicable inland navigation rules.

59. CARNIVAL CORPORATION breached these duties of care when it permitted its captain and crew to engage in the following acts of negligence:

h. Violating Inland Navigation Rule 5 by failing to maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

i. Violating Inland Navigation Rule 6, by failing to at all times proceed at a safe

speed so that he could take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions, including the state of wind and sea current.

j. Violating Inland Navigation Rule 7 by failing to use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists.

k. Failing to have sufficient crew aboard the vessel to properly keep a look out and safely dock the subject vessel.

l. Failing to take into account inclement and unsafe weather conditions ,and high wind speeds prior to setting out on the excursion.

m. Failing to consider if the subject vessel was sufficiently crewed prior to setting out for the excursion.

n. Failing to maintain control of the subject vessel at all times.

31. As a direct and proximate result of the foregoing acts of negligence Plaintiff Donavan Clarke was severely injured when on or about July 10, 2025, they boarded the shuttle boat operated by CARNIVAL CORPORATION, which then crashed into the cruise ship, the *Carnival Magic*.

32. Prior to embarking, the Captain knew or should have known of mechanical or engine deficiencies affecting the shuttle boat, which posed an unacceptable risk to the passengers aboard the vessel. Despite these conditions, the Captain proceeded with transporting passengers from a Belize port to the *Carnival Magic*.

33. While attempting to maneuver the shuttle boat back to the *Carnival Magic*, the

Captain experienced a malfunction and/or engine failure, which prevented him from stopping the shuttle boat. As a result, the shuttle boat crashed into the cruise ship, causing injury to Plaintiff Donavan Clarke.

34. Accordingly, as CARNIVAL CORPORATION and the Captain's actions caused an allision between the shuttle boat and the stationary cruise ship, the *Carnival Magic*, the law provides that there is a rebuttable presumption of negligence against the Captain.

60. As a direct and proximate result of CARNIVAL CORPORATION's negligence, Plaintiffs suffered severe bodily injury resulting in pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries, suffered permanent physical handicap, loss of earnings, and lost wage-earning capacity as her working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiffs will suffer the losses and impairments in the future. The losses are either permanent or continuing in nature. Plaintiffs has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, Donavan Clarke, demands trial and judgment against Defendant CARNIVAL CORPORATION for damages which in good faith exceed $75,000.00 exclusive of interest, costs, and attorney's fees, as well as for damages and costs that Plaintiffs will suffer and incur in the future, as a result of Plaintiffs' bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of future earning capacity, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, and for any and all other relief which the Court deems just or appropriate.

**COUNT IV - VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**
**(Donavan Clarke)**

61. Plaintiff Donavan Clarke repeats and realleges paragraphs 1-11.

62. At all times CARNIVAL CORPORATION, was the owner and operator of the subject vessel and master and employer of the vessel's shuttle Captain, who at all times was acting in the course and scope of his employment or agency with CARNIVAL CORPORATION.

63. Accordingly, under general maritime law CARNIVAL CORPORATION as the owner and operator of the subject vessel is liable for the Captain's negligence pursuant to the doctrine of *respondeat superior.*

64. On July 10, 2025, CARNIVAL CORPORATION, was operating a cruise ship open to the public for a fee using the subject vessel which was being operated on its behalf by the captain.

65. At all times material on July 10, 2025, Plaintiff Donavan Clarke was lawfully aboard the subject vessel owned/operated by, CARNIVAL CORPORATION and was not part of the crew of the vessel.

66. Accordingly at all times the Captain while acting in the scope of his agency relationship or employment with CARNIVAL CORPORATION of the subject shuttle vessel owed his passengers including the Plaintiffs a duty of reasonable care to operate the vessel safely, including keeping a proper look out and refraining from making any decisions which nautical experience and good seamanship would condemn as inexpedient and unjustifiable at the time and under the circumstances, and complying with all applicable inland navigation rules.

67. CARNIVAL CORPORATION and its agents and employees further owed Plaintiff a duty to maintain reasonable and safe means for passengers to board and disembark.

68. At all times the Captain while acting in the course and scope of his employment and or agency for CARNIVAL CORPORATION, breached these duties of care when he engaged in following acts of negligence:

a. Violating Inland Navigation Rule 5 by failing to maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

b. Violating Inland Navigation Rule 6, by failing to at all times proceed at a safe speed so that he could take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions, including the state of wind and sea current.

c. Violating Inland Navigation Rule 7 by failing to use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists.

d. Failing to have sufficient crew aboard the vessel to properly keep a look out and safely dock the subject vessel.

e. Failing to properly maintain and service the vessel.

f. Failing to take into account inclement and unsafe weather conditions ,and high wind speeds prior to setting out on the excursion.

g. Failing to consider if the subject vessel was sufficiently crewed prior to setting out for the excursion.

h. Failing to inspect and maintain the subject vessel prior to departure to ensure it

was in safe operating condition.

i. Failing to maintain control of the subject vessel at all times.

69. Prior to embarking, the Captain knew or should have known of mechanical or engine deficiencies affecting the shuttle boat, which posed an unacceptable risk to the passengers aboard the vessel. Despite these conditions, the Captain proceeded with transporting passengers from a Belize port to the *Carnival Magic*.

70. While attempting to maneuver the shuttle boat back to the *Carnival Magic*, the shuttle boat crashed into the cruise ship, causing injury to the Plaintiff Donavan Clarke.

71. Accordingly, as the Captain's actions caused an allision between the shuttle boat and the stationary cruise ship, the *Carnival Magic*, the law provides that there is a rebuttable presumption of negligence against Captain, and CARNIVAL CORPORATION is vicariously liable for the damages resulting from the Captain's negligence.

72. As a direct and proximate result of the foregoing acts of negligence by CARNIVAL CORPORATION's captain for which CARNIVAL CORPORATION is vicariously liable, Plaintiff Donavan Clarke was severely injured as a result of this allision when on or about July 10, 2025, they were passengers on the subject vessel.

73. As a direct and proximate result of CARNIVAL CORPORATION's negligence Plaintiff suffered severe bodily injury resulting in pain and suffering, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries, suffered permanent physical handicap, loss of earnings, and lost wage-earning capacity as their working ability has been impaired. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. The losses are either permanent or continuing in nature.

Plaintiffs has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff Donavan Clarke demands trial and judgment against Defendant CARNIVAL CORPORATION for damages which in good faith exceed $75,000.00 exclusive of interest, costs, and attorney's fees, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiffs' bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of future earning capacity, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, and for any and all other relief which the Court deems just or appropriate.

Respectfully submitted,

By:

FLORIDA LEGAL, LLC
Attorneys for Plaintiffs
150 SE 2nd Avenue
Suite 1001
Miami, FL 33131
(t) (305) 901-2209
(f) (786) 870-4030

*/s/ Raymond R. Dieppa*
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
E-Mail: ray.dieppa@floridalegal.law